NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0715n.06

No. 20-5306

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| OUTDOOR VENTURE CORPORATION, J.C. EGNEW, and L. RAY MONCRIEF, | ) ) ) | **FILED** Dec 22, 2020 DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| PHILADELPHIA INDEMNITY INSURANCE CO., et al, | ) ) ) | EASTERN DISTRICT OF KENTUCKY |
| Defendants-Appellees. | ) ) | |

BEFORE:     DAUGHTREY, NALBANDIAN, and MURPHY, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.     Plaintiffs Outdoor Venture Corporation (OVC), J.C. Egnew, and L. Ray Moncrief appeal a district court judgment denying their requests that defendants Grange Mutual Casualty Company and Scottsdale Indemnity Company reimburse them for the attorneys' fees and costs incurred by the plaintiffs in defending themselves in underlying lawsuits. Because we conclude that the terms of the relevant insurance policies do not require such reimbursement of fees related to the hiring by the plaintiffs of independent counsel, we affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Although this appeal now involves only three plaintiffs and two defendants, the action, as originally filed, included additional parties. In one of its opinions in the course of this litigation, the district court appropriately identified those parties and expertly summarized the relevant facts

of the present lawsuit. We thus see no reason to offer an additional summary of those facts and instead adopt the following district court statement of the background of the litigation:

> The plaintiffs in this matter are three corporations and two individuals who were officers of the corporations.
>
> The three corporations are Stearns Manufacturing and its successor Outdoor Venture Corporation (together, "OVC") and Kentucky Highlands Investment Corporation. The two individual plaintiffs are J.C. Egnew and L. Ray Moncrief. During at least the relevant time, Egnew was the president of OVC. Moncrief was a director of OVC and an officer of Kentucky Highlands.
>
> The root of this dispute is three lawsuits filed against various of the plaintiffs by a company called LEEP, Inc. and one of LEEP's insiders, Roger Blanken. LEEP alleged that it entered into "joint venture negotiations" with OVC. During the negotiations, Egnew signed on OVC's behalf a non-disclosure and non-circumvention agreement (the "NDA") which prevented OVC from contacting LEEP's lenders or customers.
>
> Eventually, LEEP and OVC signed a letter of intent which "contemplated the formation of a new company to manufacture, in Kentucky, steel insulated building panels." The companies were unable to reach an agreement, however, and negotiations ceased in August 2012.
>
> At the time, LEEP owed more than $7 million to Fortress Credit Corporation and was in default under the terms of the parties' financing agreement. After joint venture negotiations between LEEP and OVC ceased, Kentucky Highlands purchased Fortress's rights under the financing agreement. Kentucky Highlands then repossessed LEEP's assets and sold the assets to plaintiff Stearns Manufacturing, which is a subsidiary of OVC. Stearns Manufacturing no longer exists; OVC now owns Stearns' assets and liabilities.
>
> With the three lawsuits underlying this action, LEEP and Blanken asserted that Kentucky Highlands wrongfully repossessed their assets.
>
> The first lawsuit was brought by LEEP in Jefferson Circuit Court against Kentucky Highlands, OVC, Egnew, and Moncrief (the "LEEP lawsuit["]). With this lawsuit, LEEP alleged that the insureds had devised a scheme to "force LEEP out of business and to take over LEEP's business by virtue of obtaining LEEP's confidential information and then purchasing the Fortress note." LEEP alleged that, after buying the note, the insureds gave notice of default to LEEP and took possession of LEEP's facility and its assets and "took over LEEP's business and contacted LEEP's customers, all in an effort to destroy LEEP and to take over LEEP's business through unlawful means." LEEP sought $30 million in damages.
>
> The second lawsuit was brought by Blanken, who sued Kentucky Highlands and OVC in this Court. *See Blanken, et al. v. Kentucky Highlands Investment Corporation, et al.*, No. 6:13-47-DLB (E.D. Ky. filed April 22, 2013) (the "Blanken Kentucky action"). With this action, Blanken asserted that he—not LEEP—owned

a major piece of equipment repossessed by Kentucky Highlands called the Bradbury Roll Forming Machine and, thus, Kentucky Highlands had wrongfully repossessed it and sold it to OVC.

The third lawsuit was also brought by Blanken, this time in state court in Pennsylvania (the "Blanken Pennsylvania action"). In the Pennsylvania action, Blanken again sued Kentucky Highlands and OVC again asserting that the insureds wrongfully repossessed certain other inventory that belonged to him, not to LEEP. That action was later removed to federal court in Pennsylvania, which transferred the case to this Court. *See Blanken v. Kentucky Highlands Investment Corporation, et al.*, 6:14-cv-202-DLB (E.D. Ky. Removed March 7, 2014).

Kentucky Highlands, OVC, Egnew, and Moncrief were insured by at least one of the defendant insurers in this action: Grange Mutual Casualty Co., Scottsdale Indemnity Company, or Auto-Owners/Owners Insurance Company (together, "Owners").[1] These insurers asserted, however, that the claims brought by LEEP and Blanken against their insureds were not covered under the applicable insurance policies. Grange refused to defend their insureds at all. Owners offered to defend the insureds under a "reservation of rights" and appointed counsel to represent them. Scottsdale did the same, except with regard to Moncrief, who Scottsdale refused to defend at all.

The insureds, however, retained their own counsel to represent them. With this action, they seek reimbursement for the amounts they paid to defend themselves in the three lawsuits. They assert a breach of contract claim and seek a declaratory judgment that the insurance companies were obligated to defend them in the underlying actions. They also assert claims for statutory bad faith and common-law bad faith against Scottsdale and Grange.

Each of the insurance company defendants assert a counterclaim in which they ask the Court to declare that they have no duty to reimburse their insureds for the costs incurred in defending the underlying actions. In addition, Owners asks that Kentucky Highlands be required to reimburse it for the costs of defending it in the underlying actions. None of the insurers seek to recover any amounts paid by them to settle the underlying actions.

The insureds move for partial summary judgment, asking for judgment in their favor that the insurance companies had a duty to defend them in the underlying actions. Each of the insurance companies also moves for summary judgment, asking the Court to find that they had no duty to defend the plaintiffs.

*Outdoor Venture Corp. v. Phila. Indem. Ins. Co.*, No. 6:16-cv-182-KKC, 2018 WL 4656400, at

*1–2 (E.D. Ky. Sept. 27, 2018) (citations omitted).

---

[1] The insureds' claims against a fourth insurer, Philadelphia Indemnity Insurance Company, were voluntarily dismissed by the insureds.

After the plaintiffs voluntarily dismissed their claims against Philadelphia Indemnity Insurance Company, the district court issued a lengthy opinion in which it concluded that summary judgment should be entered in favor of Grange and Owners because neither insurer had a contractual duty to defend the plaintiffs in the underlying actions. *Id.* at *4–11. The district court further held that Scottsdale "complied with its duty to defend OVC and Egnew by appointing counsel to represent them in the LEEP and Blanken actions," but "breached its duty to defend Moncrief in the LEEP and Blanken actions." *Id.* at *19.

Subsequently, the district court entered agreed orders that dismissed all claims by the plaintiffs against Owners, all counterclaims by Owners against the plaintiffs, all claims by Moncrief against Scottsdale, and Scottsdale's counterclaim against Moncrief. *Outdoor Venture Corp. v. Phila. Indem. Ins. Co.*, No. 6:16-cv-182-KKC, 2020 WL 891213, at *1 (E.D. Ky. Feb. 24, 2020). Finally, the district court granted summary judgment to Grange and Scottsdale on the plaintiffs' bad-faith claims and dismissed any counterclaims by the insurers as moot. *Id.* at *2. Thus, the only issues now remaining before us on appeal involve the plaintiffs' claims that Grange and Scottsdale are liable for reimbursement of the expenses incurred by the plaintiffs in obtaining independent counsel to defend themselves in the underlying lawsuits.

## DISCUSSION

### Standard of Review

We review *de novo* a district court's grant of summary judgment. *See Dodd v. Donahoe*, 715 F.3d 151, 155 (6th Cir. 2013). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in

the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for that party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

**Applicable Law**

The district court exercised its diversity jurisdiction over this dispute pursuant to the provisions of 28 U.S.C. § 1332. Consequently, on appeal we are obligated to apply the substantive law of the forum state—here, the Commonwealth of Kentucky. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Fox v. Amazon.com, Inc.*, 930 F.3d 415, 422 (6th Cir. 2019) (citation omitted).

At issue in this appeal are the terms of insurance policies issued by Grange and Scottsdale in favor of OVC and its officers and directors, specifically those terms setting forth the requirements for the insurance companies to defend the plaintiffs against the allegations made by LEEP and Blanken. The Kentucky Supreme Court has held consistently that the construction of insurance contracts generally is considered a matter of law to be determined by the court, *see, e.g.*, *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007), and "[t]he determination of whether a defense is required must be made at the outset of the litigation." *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991). We too have recognized explicitly that "[u]nder Kentucky law, a court should determine at the outset of litigation whether an insurance company has a duty to defend its insured by comparing the allegations in the underlying complaint with the terms of the insurance policy." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003) (citation omitted).

In making that determination, as well as in construing other contractual provisions, "[t]he language of a written insurance policy is given its plain meaning, unless terms are otherwise defined therein." *Am. Mining Ins. Co. v. Peters Farms, LLC*, 557 S.W.3d 293, 296 (Ky. 2018)

(citation omitted). If the meaning of any contract term is ambiguous, however, the ambiguity must be "interpreted against the drafter-insurer." *Id.* (citation omitted).

## Claims Against Grange

The district court ruled that Grange had no duty to defend the plaintiffs against the allegations made by LEEP and Blanken. Specifically, the district court concluded that Grange was required to defend its insureds only from claims of "bodily injury," "property damage," or "personal and advertising injury." Because, according to the district court, the lawsuits filed by LEEP and Blanken did not allege actions that fell within the definitional parameters of those contractual terms, no duty to defend ensued.

### Bodily Injury or Property Damage

Pursuant to the provisions of Grange's policies, the company agreed:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

More specifically, Grange's liability for, and duty to defend against, bodily injury and property damage came into play only if the alleged bodily injury or property damage was caused by an "occurrence" in the coverage territory during the policy period. Because the policies defined an "occurrence" to mean "an accident," coverage—and thus a duty to defend—was excluded in situations in which the bodily injury or property damage was "expected or intended from the standpoint of the insured."

Both the LEEP complaint and the Blanken complaints alleged that actions undertaken by the plaintiffs resulted in machinery and other assets belonging to LEEP or to Blanken being taken without legal authorization. According to the Grange policies, such takings could be considered

"property damage," which the policies defined as either "[p]hysical injury to tangible property" or "[l]oss of use of tangible property that is not physically injured." As the policies also provided, however, for coverage to exist for such property damage, the physical injury or the loss of use must not have been "expected or intended from the standpoint of the insured" and must not have arisen out of a failure by the insured (or a person acting on the behalf of an insured) "to perform a contract or agreement in accordance with its terms."

Although the Grange policies at issue in this appeal did not define the term "accident" explicitly, Kentucky courts have taken numerous opportunities to offer guidance for construing such a contractual provision. In *Fryman v. Pilot Life Insurance Co.*, 704 S.W.2d 205, 206 (Ky. 1986), for example, the Kentucky Supreme Court noted that because the word "accident," "as used in insurance policies, [has] never acquired a technical meaning in law, [it] must be interpreted according to the usage of the average [person]." Thus, "[a]n accident is generally understood as an unfortunate consequence which befalls an actor through . . . inattention, carelessness or perhaps for no explicable reason at all." *Id.* "Conversely, a consequence which is a result of plan, design or intent is commonly understood as not accidental." *Id.*

More than a quarter of a century later, following years of attempting to divine the applicability of the concept of "accident" to different fact patterns, *see, e.g.*, *Bituminous Cas. Corp.*, 240 S.W.3d at 638–40, and *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69 (Ky. 2010), the Kentucky Supreme Court made clear in *Martin/Elias Properties, LLC v. Acuity*, 544 S.W.3d 639, 642–43 (Ky. 2018), "that the legal analysis used to determine whether something constitutes an *accident* for issues of [commercial general liability] coverage is the doctrine of fortuity, which encompasses both intent and control." (Emphasis in original.) Specifically, courts must determine:

> 1) whether the insured intended the event to occur; and 2) whether the event was a "'chance event' beyond the control of the insured." If the insured did not intend the event or result to occur, and the event or result that occurred was a chance event beyond the control of the insured, then [commercial general liability] coverage covering *accidents* will apply to the benefit of the insured.

*Id.* at 643 (emphasis in original) (footnote omitted).

Arguing that their actions in repossessing assets belonging to LEEP and Blanken fell under the policies' definitions of an "accident," the plaintiffs point to a section heading in the *Bituminous Casualty* opinion that states, "Accident includes intentional acts that cause unexpected or unintended results from the standpoint of the insured." *Bituminous Cas. Corp.*, 240 S.W.3d at 638. They thus insist that, although they did intend to repossess the LEEP and Blanken assets, they did not intend to interfere with any "legitimate and senior rights" of LEEP and Blanken. As a result, they maintain that the actual interference with what were alleged to be superior rights must be considered an act beyond their control.

Such an argument puts too fine a point on an interpretation of the holding in *Martin/Elias Properties*. In essence, what the plaintiffs are arguing is that they intended to take possession of the assets of LEEP and Blanken, but only if such repossession was not improper, or in other words, did not result in a denial of insurance coverage. Such a formulation of the plaintiffs' actions turns the concepts of accident and fortuity on their heads. Indeed, the plaintiffs intended the exact damage that occurred—the seizure of the assets of LEEP and Blanken. The decision to seize the assets, as well as the method of doing so, was completely within the plaintiffs' control and thus cannot be considered accidental.

The Grange policies also explicitly excluded from coverage any damage to property that was not physically injured but which arose out of a failure of the insured "to perform a contract or agreement in accordance with its terms." In its second amended complaint in Jefferson Circuit

Court, LEEP alleged that Egnew, as president of OVC, signed a non-disclosure and non-circumvention agreement with LEEP that "precluded OVC, its agents and representatives from contacting any of LEEP's creditors or lenders or customers or suppliers." According to LEEP, OVC and Egnew breached that agreement "by using confidential and proprietary information provided, including LEEP's lender negotiations and non-public lender agreements for a lucrative settlement of debt . . . ."

LEEP's allegation regarding the plaintiffs' failure to abide by the terms of the non-disclosure and non-circumvention agreement brought the plaintiffs' actions squarely within yet another explicit exclusion to coverage for property damage under the Grange policies. Because Grange thus had no duty to defend the plaintiffs in the underlying actions alleging property damage, Grange also has no responsibility for now reimbursing the plaintiffs for attorneys' fees and costs associated with retaining independent counsel.

**Personal and Advertising Injury**

Under the provisions of the commercial general liability policy Grange had with the plaintiffs, the insurance company also agreed:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

In pertinent part, the policy defined "personal and advertising injury" as injury arising out of the "wrongful entry into . . . premises that a person occupies" or "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services." The policy included specific exclusions from coverage, however, for any such injury "caused by or at the direction of the insured with the

knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" or any such injury "arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity."

The plaintiffs argue on appeal that the district court could not properly determine Grange's duty to defend them against LEEP's[2] claims of "personal and advertising injury" merely by examination of the allegations in the complaint in the underlying action. In putting forth that argument, the plaintiffs assert that, at the pleading stage of the litigation, it is impossible to establish whether they *knowingly* violated the rights of another—a prerequisite to invocation of the exclusion provision of the policy. Rather, the plaintiffs contend that such information can be ascertained only through information obtained pursuant to discovery or by a finder of fact at trial.

As we have noted already, however, Kentucky law calls upon courts to determine an insurer's duty to defend *at the outset of litigation* by reference to the allegations in the underlying complaint. *Westfield Ins. Co.*, 336 F.3d at 507. Here, the allegations of "personal and advertising injury" in LEEP's complaint made clear that the actions undertaken by the plaintiffs fall outside the coverage provisions of Grange's policies because of the plaintiffs' alleged knowledge of the consequences of those actions. Specifically, LEEP's second amended complaint against OVC, Egnew, Moncrief, Kentucky Highlands Investment Corporation, and others alleged, in pertinent part:

> 93. All Defendants were specifically instructed not to contact either Fortress or the landlord, and all Defendants agreed to keep the information provided by LEEP confidential and to make no contact with either Fortress or the landlord.

> 94. From on or about early 2012 through December 26, 2012, the Defendants conspired, planned, organized, and schemed, to force LEEP out of business and to take over LEEP's business by virtue of obtaining LEEP's confidential information and then purchasing the Fortress note.

---

[2] Blanken did not allege "personal and advertising injury" in either of his underlying complaints.

95.   Nordstrom[, LEEP's president,] communicated to Defendants his private negotiations with Fortress, and they used that confidential information to approach Fortress to obtain an assignment of the Note for only $750,000 and then give notice of default to LEEP[,] demand over $7 million dollars to be paid immediately, take possession of [a] former LEEP facility without any legal foreclosure action and wrongfully repossess all LEEP assets.  Defendants substantially profited from the confidence it gained through LEEP.

96.   On or about December 26, 2012 and continuing thereafter, Defendant, KHI, being assisted by other Defendants, then wrongfully entered the landlord's premises and took manufactured LEEPCore™ structural insulated panels and removed the Bradbury Roll Forming lines and related support equipment and removed other equipment and supplies belonging to LEEP and others.

97.   KHI in concert with other Defendants wrongfully hired away the LEEP key employees Nordstrom had previously identified in confidential disclosures and took over LEEP's business and contacted LEEP's customers, all in an effort to destroy LEEP and to take over LEEP's business through unlawful means.

98.   Defendant, KHI, in concert with other Defendants wrongfully locked LEEP out of its Somerset fabrication building in an attempt to further destroy LEEP's business.  All actions of Defendants in furtherance of the scheme to destroy LEEP and use confidential information to take LEEP's business were unlawful and all were performed by and through unlawful means.

. . .

159.   Sotera is a defense contractor which has entered a contract with LEEP regarding the manufacturing and construction of man camps for use of the United States Armed Forces.  Sälzer is a Germany company which has entered into a contract with LEEP.

160.   The Defendant Egnew slandered LEEP to Sotera and Sälzer by disparaging LEEP's business.

Such statements clearly allege that the actions of the plaintiffs in this case now on appeal were taken with full knowledge of the fact that they would violate the rights of others, that the plaintiffs gained entry into a premises only as a result of violating the terms of a confidentiality agreement, and that representations made by Egnew disparaged an "organization's goods, products, or services."  The district court thus did not err in ruling that Grange had no duty to defend the plaintiffs on LEEP's claims of personal and advertising injury.  Consequently, Grange also bears no liability for reimbursing the plaintiffs for the costs they incurred in employing independent counsel for their defense.

**Claims Against Scottsdale**

In a final appellate issue, plaintiffs OVC and Egnew contend that, even though Scottsdale appointed counsel to defend them in the lawsuits filed by LEEP and Blanken, the insurance company now should reimburse them for the costs of employing their own independent counsel. According to the plaintiffs, the attorneys provided by Scottsdale to defend them *might have* operated under a conflict of interest because those attorneys allegedly also owed a duty to the insurance company to minimize any liability for the insurer.

Despite the plaintiffs' claim that counsel provided by Scottsdale *might* consider their primary duty to be to the insurance company rather than to the plaintiffs themselves, Scottsdale appointed one law firm to represent the plaintiffs in the underlying lawsuits and retained an entirely separate firm to represent the insurer's interests. The Kentucky Bar Association has said, more than once, that "[w]hen an Insurer provides the defense to an Insured, the attorney represents the Insured but not the Insurer." Ky. Bar Ass'n Ethics Op. KBA E-410 (1999).[3]

Moreover, the plaintiffs' appellate brief claims to identify "examples of how counsel appointed by Scottsdale could manipulate the proof . . . in a way that would have a real impact on the coverage determination." But before the district court, the plaintiffs admitted that they "are certainly not suggesting that appointed counsel did anything wrong in these cases[.]" So the plaintiffs essentially argue that Scottsdale's reservation of rights alone created the prospect of a conflict of interest, entitling them to select their own counsel at the expense of Scottsdale. Of course, some jurisdictions hold that "a reservation of rights issued on certain bases creates a

---

[3] To be sure, Kentucky courts are not *bound* by the bar association's ethics opinions. *See, e.g.*, *United States ex rel. U.S. Attorneys for the E. and W. Dist. of Ky. v. Ky. Bar Ass'n*, 439 S.W.3d 136, 141 (Ky. 2014). At the same time, the Kentucky Supreme Court has cited bar association opinions as persuasive authority. *See Hiatt v. Clark*, 194 S.W.3d 324, 328 (Ky. 2006); *Shoney's, Inc. v. Lewis*, 875 S.W.2d 514, 516 (Ky. 1994).

conflict of interest such that the Insured is entitled to 'independent counsel' paid for by the Insurer." Ky. Bar Ass'n Ethics Op. KBA E-410 (1999). But that "stance is based on the notion that the attorney has as clients both the Insured and the Insurer, a view to which Kentucky does not adhere." *Id.*

Further, the plaintiffs admit that they "did not explicitly . . . reject the defense offered by their insurance carriers" prior to hiring their own counsel. Even in jurisdictions that require appointment of independent counsel after an insurer's reservation of rights, the insured generally must reject the insurer's appointed counsel before it hires its own attorney. *See, e.g.*, *Trinity Universal Ins. Co. v. Stevens Forestry Serv., Inc.*, 335 F.3d 353, 356 n.3 (5th Cir. 2003) (applying Louisiana law); *see also* Douglas R. Richmond, *Independent Counsel in Insurance*, 48 San Diego L. Rev. 857, 874 (2011).

Even more, under the terms of the Scottsdale policy, the plaintiffs had to seek the written consent of the insurer before incurring any additional expenses:

> The **Insureds** agree not to . . . incur any **Costs, Charges and Expenses** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld. The **Insurer** shall not be liable for any settlement, **Costs, Charges and Expenses**, assumed obligation or admission to which it has not consented.

There is no evidence that plaintiffs in this case ever made such a request.

At least one district court has stated that "the right to independent counsel when an insurance company defends under a reservation is a novel question of state law" in Kentucky. *Twin City Fire Ins. Co. v. Chewning*, No. 5:18-CV-124-TBR, 2019 WL 2147282, at *8 (W.D. Ky. May 14, 2019). And two other federal trial courts also have grappled with the issue. *Outdoor Venture Corp.*, 2018 WL 4656400, at *18–19; *Auto-Owners Ins. Co. v. Egnew*, 152 F. Supp. 3d 868, 879 (E.D. Ky. 2016). We feel confident, however, that in the circumstances of this particular

case, Kentucky law does not require reimbursement for the counsel plaintiffs selected. OVC and Egnew not only failed to identify any injury that they suffered as a result of Scottsdale providing them with legal counsel, they also failed to take the steps necessary to justify the actions for which they now seek reimbursement. The district court thus did not err in granting summary judgment to Scottsdale on the claim that the insurer was required to pay the cost of independent counsel retained by OVC and Egnew.

## CONCLUSION

After paying premiums for insurance coverage that included a duty on the part of the insurance companies to defend the insureds from certain claims seeking monetary damages, the plaintiffs suddenly found themselves either denied the benefits of that coverage altogether or worried that the defense offered by the insurance company would not have the best interests of the insureds at heart. The district court did not err, however, in concluding that the claims against the plaintiffs for "bodily injury or property damage" and for "personal and advertising injury" by LEEP and Blanken fell within exclusions to coverage in the Grange policies. Because Grange thus had no duty to defend those claims, it was not liable for the costs incurred by the plaintiffs in retaining their own counsel. Additionally, Scottsdale did provide OVC and Egnew with legal representation—representation that the plaintiffs failed to reject prior to hiring their own counsel. The district court thus also did not err in denying OVC and Egnew reimbursement for the fees they incurred in hiring independent counsel.

We AFFIRM the judgment of the district court.