RENDERED: APRIL 26, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky

2016-SC-0000195-DG

MARTIN/ELIAS PROPERTIES, LLC            APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.            CASE NO. 2013-CA-001428
KENTON CIRCUIT COURT NO. 09-CI-01276

ACUITY, A MUTUAL INSURANCE COMPANY            APPELLEE

**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**<u>AFFIRMING</u>**

In *Cincinnati Ins. Co. v. Motorist Mut. Ins. Co.*[1], this Court held that damage because of a contractor's faulty workmanship does not constitute an occurrence covered under the contractor's commercial general liability (CGL) insurance policy. The Court of Appeals applied the principles of *Cincinnati* in the present case to hold that a contractor's faulty workmanship on the basement and foundation of an existing structure, resulting in extensive damage to the entire building, was not an accident triggering coverage as an occurrence under the contractor's CGL policy. On discretionary review, we agree that the Court of Appeals correctly applied the law and affirm.

---

[1] *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69 (Ky. 2010).

## I. FACTUAL AND PROCEDURAL HISTORY.

Martin Elias/Properties, LLC ("MEP") purchased an old home in a historic urban neighborhood to renovate and resell for a profit. After completing renovations on the first, second, and third floors, MEP hired Tony Gosney to renovate and expand the basement.

Gosney agreed that he would dig the existing basement deeper, pour new footers to stabilize the building, and pour a new concrete floor. While performing his work on the townhouse, Gosney failed to support the existing foundation adequately before digging around it. Within days, the old foundation began to crack and eventually the entire structure began to sag. Interior doors began sticking and brick walls began cracking. At this point, Gosney stopped work and notified his CGL insurer, Acuity. Acuity recommended that MEP hire a structural engineer to evaluate the condition of the structure.

MEP's structural engineer reported that the entire structure was at risk of imminent collapse. To repair the damage caused by Gosney's work would require substantial work. After learning this, MEP made a demand for payment upon both Gosney and Acuity, but they rejected the demand. So MEP sued Gosney and Acuity in circuit court. Against Gosney, MEP claimed negligence, breach of contract, and breach of warranties. Against Acuity, MEP asserted bad faith by failing to provide coverage under its CGL policy. Meanwhile, Gosney sought bankruptcy protection and disappeared. Later, efforts by private

investigators to locate Gosney failed, and he neither testified at trial nor participated in any way.

MEP and Acuity each filed motions for summary judgment citing the same language in Acuity's CGL policy. The policy provided that Acuity would pay for property damage if it resulted from an "occurrence." The policy defined *occurrence* as "an *accident*, including continuous or repeated exposure to substantially the same general harmful conditions." The policy did not define the term *accident*.

MEP argued that the damage to the property from Gosney's work should be considered an accident triggering coverage under the CGL policy issued by Acuity. Acuity argued that the structural damage was caused by Gosney's faulty workmanship, a circumstance that failed to qualify as an *occurrence* under the CGL policy, and therefore, the loss was not covered by Gosney's policy.

The trial court granted partial summary judgment to both parties. The court ruled that MEP could not recover from Acuity for the damage to the basement because that damage directly resulted from the faulty work Gosney performed, hence not satisfying the requirement of an occurrence under the CGL policy. But the trial court also ruled that MEP could recover from Acuity under the policy for the damage to the structure above the basement level. Damage to the structure above the basement, the trial court reasoned, was an unexpected and unintended consequence of Gosney's faulty work on the

3

basement, making this portion of the total loss an occurrence covered by the policy.

The case was then tried to a jury on the issue of damages. The jury found the cost to repair the entire structure to be $700,000. It found the cost to repair the basement alone to be $227,000. Applying it's ruling on liability from its summary judgment, the trial court $227,000 from the total cost of repair to arrive at a final judgment that required Acuity to pay MEP $473,000.

Acuity appealed the judgment, and a unanimous panel of the Court of Appeals reversed the trial court judgment. Applying the rule established in *Cincinnati*, the appellate panel emphasized Gosney's intent and control over the work to reverse the trial court's summary judgment and hold that none of the structural damage qualified as an accident triggering coverage as an occurrence under Acuity's CGL policy. We agree.

## II. ANALYSIS.

### A. Standard of Review.

Interpretation of a contract is ordinarily a question of law for a court's determination.[2] So with questions of contractual interpretation, an appellate court reviews the lower court's findings de novo, with no deference to the ruling of the lower court.[3]

---

[2] *Id.* at 73.

[3] *Id.*

## B. Bituminous Casualty Corporation v. Kenway Contracting and Cincinnati Insurance Company v. Motorists Mutual Insurance Company.

As they did in the courts below, the parties cite to two different cases from this Court to support their arguments. MEP cites to *Bituminous Casualty Corporation v. Kenway Contracting*[4] to support its argument, while Acuity cites *Cincinnati* for support.

The older of the cases, *Bituminous* addressed the definition of *accident* in a CGL. In *Bituminous*, the owners of a house contracted for the removal of the attached carport, so they could convert the house into a commercial unit. On the morning the work was to begin, an employee of the contractor arrived at the property and began the process of removing the carport. But because of a miscommunication between the contractor and its employee, the employee proceeded to demolish the entire house. By the time the contractor arrived on the scene, the employee had done a significant amount of work–half the house had been demolished.

The owners made a claim against the contractor's CGL policy. The insurer denied coverage, arguing that the destruction of the residence was not an accident covered by the policy. This Court held that the damage was covered under the CGL policy. The Court stated that CGL coverage applied because the demolition of the structure was not the "plan, design or intent of the insured."[5]

---

[4] *Bituminous Cas. Corp v. Kenway Contracting, Inc.*, 240 S.W.3d 633 (Ky. 2007).

[5] *Id.* at 637.

Three years after *Bituminous*, we unanimously decided *Cincinnati*. Once again, we were asked to address the term *accident* in a CGL policy. *Cincinnati* involved the faulty workmanship of a newly constructed house. The homeowners purchased it from Elite Homes, but after only five years, the house had to be completely razed because it was so poorly built. The homeowners made a claim against Elite Homes' CGL policy, claiming that the resulting damage was an occurrence under the policy.

In deciding *Cincinnati*, we established a test different from the one articulated in *Bituminous*. Rather than asking, as we did in *Bituminous*, if the damage was outside of the "plan, design or intent of the insured," we instead focused on a concept widely accepted in insurance law, the doctrine of the "fortuity" of the event.[6] In doing so, we recognized that there are two aspects of fortuity: intent and control. We held that the faulty-workmanship claim brought by the homeowners was not covered by the builder's CGL policy because the builder was in control of the construction of the residence and that the builder fully intended to take the action that he took on the project such that finding liability under the CGL policy would be tantamount to converting the builder's CGL policy into a performance bond or unconditional guarantee.

We make clear today that the legal analysis used to determine whether something constitutes an *accident* for issues of CGL coverage is the doctrine of fortuity, which encompasses both intent and control. Although *Bituminous* did

---

[6] *Cincinnati*, 306 S.W.3d at 74.

6

not include as part of its analysis a discussion of the doctrine of fortuity, *Bituminous* provides well-reasoned instruction on a particular set of facts. That being said, in determining whether an event constitutes an *accident* so as to afford the insured CGL policy coverage, courts must analyze this issue according to the doctrine of fortuity: 1) whether the insured intended the event to occur; and 2) whether the event was a "'chance event' beyond the control of the insured."[7] If the insured did not intend the event or result to occur, and the event or result that occurred was a chance event beyond the control of the insured, then CGL coverage covering *accidents* will apply to the benefit of the insured.

### C. Gosney's Work did not qualify as an Occurrence under the CGL.

In the performance of his contractual obligation in the present case, Gosney's actions undermined the structural integrity of MEP's historic residential property. His failure to support the existing structure before digging around the old foundation resulted in cracking of the original foundation that led inexorably to near destruction of the entire structure. We review this case having fully adopted our holding in *Cincinnati.*

As recognized by the partial summary judgment granted by the trial court, MEP argues, that at the very least, the damage done to the property above the basement should trigger coverage as an accident. We agree with the Court of Appeals that this cannot be the case.

---

[7] *Cincinnati,* 306 S.W.3d at 76 (internal citations omitted).

MEP points to the final footnote of *Cincinnati* where we stated, "a general rule exists whereby a CGL policy would apply if the faulty workmanship caused bodily injury or property damage to something other than the insured's allegedly faulty work product."[8] That same footnote goes on to state, "Thus, as we construe it ... the general rule could lead to coverage if ... the Mintmans' allegedly improperly constructed home damaged *another's* property. However, we need not definitively decide in this case whether we should adopt this general rule..."[9] As in *Cincinnati*, the facts today do not provide us with an opportunity to adopt this rule because the assertion of damages before us is to MEP's property alone.

Our facts today are not significantly different from those in *Cincinnati*. Of importance, the contract language we construe today in the CGL policy is exactly the same language we saw in *Cincinnati*. As discussed above, in *Cincinnati* we decided faulty workmanship performed by the insured homebuilder did not qualify as an occurrence under their CGL policy. The damages alleged by the plaintiffs in *Cincinnati* consisted of cracks in the drywall and exterior brick walls, defective windows and doors, sagging floors, separation of brick veneer from exterior walls, and leaning walls. Like Gosney, the homebuilders in *Cincinnati* had full control over their work and executed their work according to their own plan. We held the resulting damage to the

---

[8] *Cincinnati*, 306 S.W.3d at fn. 45.

[9] *Id.*

8

home was not of an accidental nature creating a fortuitous event, but rather an unintended consequence of poor workmanship.

A factual distinction between *Cincinnati* and the case before us today is that the damage alleged to have been done by the homebuilders in *Cincinnati* was the result of poor workmanship on parts of the home on which they had directly worked or of which they had direct control. As for Gosney, he was contracted to work on the basement and foundation exclusively, while work above the basement was done by others. Although his work was to be done in the basement, Gosney's poor workmanship resulted in damage throughout the entire property, making it structurally unsound.

We note with approval the application of our holding in *Cincinnati* by the federal district court in *McBride v. Acuity*.[10] In *McBride*, the trial court faced strikingly similar facts to those before us and identical CGL policy language. In fact, the case involved an Acuity CGL policy.

In *McBride*, a contractor subcontracted the construction of the footer and basement for the property. The plaintiffs experienced several problems related to the differential settlement of the house. These damages, caused by the failure of the foundation system to provide stable support for the house, included cracking to the exterior brick and mortar, the interior dry wall, and the basement floor. Relying on our holding in *Cincinnati*, the trial court ruled

---

[10]*McBride v. Acuity*, S:10-CV-173, 2011 WL 6130922 (W.D. Ky. Dec 8, 2011), aff'd 510 Fed. Appx. 451 (6th Cir. 2013)

9

that there was no accident because the contractor fully complied with its planned work and therefore did not trigger an occurrence under the CGL.

We agree with the well-reasoned opinion of from the federal district court. In the case before us, Gosney had both intent and full control when conducting his work, which ultimately failed to support the existing structure. So it cannot be said that the resulting damage from Gosney's poor workmanship was a fortuitous event. For an event to be fortuitous, and therefore an accident, it must be "beyond the power of any human being to bring ... to pass, [or is] ... within the control of third persons...."[11]

Like Gosney, the subcontractor in *McBride* had full control of how to conduct the work on the basement. Damage that results from poor workmanship would be considered an accident in laymen's terms. One would not purposefully perform substandard work for the purpose of damaging property. So the emphasis should not be whether the damage done is the type of damage that would be expected by the contractor, but rather whether the damage resulted from the actions purposefully taken by the contractor or those working under the contractor's control.

The above reasoning helps emphasize the control and intent principles we found so compelling in *Cincinnati*. For instance, in our case, had the damage to the property resulted from fire caused by Gosney's knocking over a kerosene lamp, it would clearly be an accident. Gosney would not intend to

---

[11] *Cincinnati,* 306 S.W.3d at 76.

10

knock the lamp over and knocking it over by accident would be outside of his control.

While the trial court was Solomonic in its partial summary judgment splitting the liability for this unfortunate loss, it failed to focus on the proper elements from *Cincinnati.* Instead of focusing on the fact that Gosney fully intended to do what he did and had complete control over the work to excavate the basement and stabilize the foundation, it focused instead on the fact that Gosney never intended to bring down the entire house.

Because the actions taken by Gosney, which led to the property damage, were entirely under his control, and he fully intended to execute the plan as he did, we cannot say that the resulting damage throughout the property was an accident.

### III.  CONCLUSION.

For the foregoing reasons we affirm the opinion of the Court of Appeals.

All sitting. Minton, C.J.; Cunningham, Hughes, Keller, and VanMeter, JJ., concur. Wright, J., concurs in result only by separate opinion in which Venters, J., joins.

WRIGHT, J., CONCURRING IN RESULT ONLY: While I agree with the result of the majority's opinion, I disagree as to its reasoning. Here, the policy language specifically excludes:

> that particular part of real property on which you or any contractor
>
> or sub-contractor working directly or indirectly on your behalf is
>
> performing operations if the property damage arises out of those

11

operations; or . . . [t]hat particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.

Therefore, even if we were to determine Gosney's actions amounted to an accident, the policy exclusions would cover neither the basement in which the work was performed nor the restoration and repair of the upper floors of the house.

The majority focuses on the issue of control in making the determination that Gosney's actions was not an occurrence. Under this analysis it is hard to see how an accident could ever occur. I agree that the Majority's example of knocking over the kerosene lamp would be an accident, but under the control analysis it puts forth, knocking over the lamp and burning the house down would not be an accident. In the lamp example, the contractor would have had control over choosing a flammable light source, the placement of the lamp, the manner in which he worked, and the movements which ultimately led to the lamp being knocked over. In my opinion, the majority goes too far today in making it significantly harder for injured parties to recover.

However, due to the terms of the policy as outlined above, I agree that Gosney's actions in this case were not covered under the policy. Therefore, I concur in result only.

Venters, J., joins.

12

COUNSEL FOR APPELLANT:

Paul R. Boggs, III
Jonathan Douglas Gray
Wallace Boggs, PLLC


COUNSEL FOR APPELLEE:

Katherine Kennedy
Laura Salzman
Judd Uhl
Lewis, Brisbois, Bisgaard & Smith, LLP