# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: AUGUST 18, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

### 2019-SC-0451-DG & 2020-SC-0153-DG

BRIANNA ROBINSON                                    APPELLANT/CROSS-APPELLEE

ON REVIEW FROM COURT OF APPEALS
V.            NOS. 2016-CA-1667 & 2016-CA-1668
CALLOWAY CIRCUIT COURT NO. 13-CI-00519

JOHN ABBINGTON THOMAS; JOHN
ABBINGTON THOMAS D/B/A ROOM
TO GROW PRESCHOOL; AND ROOM
TO GROW PRESCHOOL, LLC                         APPELLEES/CROSS-APPELLANTS

MONROE GUARANTY INSURANCE                         APPELLEE/CROSS-APPELLEE
COMPANY

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING IN PART, REVERSING IN PART, AND REMANDING**

In this consolidated insurance coverage case, the Court of Appeals

affirmed an order of the Calloway Circuit Court granting declaratory and

summary judgment to Monroe Guaranty Insurance Company by interpreting

an exclusion to a Commercial General Liability (CGL) insurance policy as

precluding coverage. Brianna Robinson allegedly sustained injuries from an

assault while attending a preschool insured under the CGL policy. Brianna, as

well as John Abbington Thomas, John Abbington Thomas d/b/a Room to Grow

Preschool, and Room to Grow Preschool, LLC, moved this Court for

discretionary review, which we granted, to determine whether the trial court

properly found no insurance coverage existed under the policy issued by Monroe Guaranty. Having reviewed the record, the law, and the arguments of the parties, we affirm in part, reverse in part, and remand for further proceedings.

Over two decades ago, two-year-old Brianna was enrolled in Room to Grow Preschool owned and operated by John Thomas in Murray, Kentucky. Monroe Guaranty had issued a CGL insurance policy to "Room to Grow Preschool John A. Thomas DBA."

Within a few days, it became clear Brianna did not want to attend the preschool. At bedtime on May 31, 2000, she told her mother, Lisa Robinson, another child at Room to Grow, Madison, had touched her vaginal area inappropriately. Unsure how to respond, Lisa put the child to bed. The following day, Brianna's father, Dr. Thomas Robinson, picked her up from Room to Grow. Shortly thereafter, she told her father "it hurts to go potty." After Dr. Robinson found her vaginal area to be "red and raw," he and his wife agreed Brianna should be seen by their family physician, Dr. Richard Crouch.

Dr. Crouch opined a serious fall caused the injury or the irritation had been caused by someone's intentional act. Dr. Crouch recommended Brianna be taken to a gynecologist immediately. The next day, Dr. Dawn Deeter examined Brianna under anesthesia. She determined Brianna's hymen was stretched and discovered labial and vulvar lacerations indicative of attempted penetration with a blunt object. Dr. Deeter and Brianna's parents reported the incident to police and the Cabinet for Health and Family Services (CHFS).

2

During the ensuing investigation, officers spoke with Dr. Deeter regarding her findings. After recounting her observations of Brianna's injuries, Dr. Deeter indicated she had consulted with another physician who opined Brianna's injuries were not caused by a child. Both physicians believed the injuries resulted from some sort of penetration.

Officers then spoke with the Robinsons. Lisa indicated Brianna had made various statements suggesting several possible perpetrators. On separate occasions, Brianna stated she had been touched or rubbed by five-year-old Madison, Thomas's thirteen-year-old son, and Thomas, himself. When questioned about who was present when the abuse occurred, Brianna looked at her father and said "somebody gonna get you."

Interviews were conducted with four daycare employees, Thomas, and his wife. All stated the abuse did not occur at Room to Grow and none recalled any injuries or complaints of pain from Brianna. Further, because of the open setup of the daycare, each indicated it would have been impossible for anyone to be alone with a child without being observed.

Dr. Robinson and Thomas subsequently underwent polygraph and urine testing, and each provided DNA samples. Thomas was deemed to have been truthful during the polygraph. Dr. Robinson's polygraph results were deemed to be inconclusive. Semen was discovered on several pairs of Brianna's underwear, including a pair she had not worn to Room to Grow. DNA testing excluded Thomas as the contributor, but the sample included a mixture of DNA from Brianna and Dr. Robinson.

Dr. Robinson was ultimately indicted for sexual abuse. He was acquitted following a jury trial. No other criminal charges have been brought against any other alleged perpetrator. Thomas never informed Monroe Guaranty of the alleged assault or the ensuing police investigation.

Thirteen years after the assault, Lisa sued Thomas and Room to Grow for negligence, negligent infliction of emotional distress, and negligent failure to rescue. Upon reaching the age of majority, Brianna was substituted as plaintiff in place of her mother. The complaint alleged various acts of negligence, including:

> a. permitting an employee or other person to be alone with a child on the premises of Room to Grow Pre-school during school hours during which time the employee was able to penetrate the vagina of [Brianna];
>
> b. failing to properly and adequately supervise and discipline its employees to prevent the injuries that occurred to [Brianna];
>
> c. failing to implement, enforce and/or follow adequate protective and supervisory measures, policies and procedures for the protection of students at Room to Grow Pre-school, including [Brianna];
>
> d. failing to adopt enforce and/or follow policies and procedures to protect minors against harmful influence and contact by its teachers and/or employees and/or other persons;
>
> e. failing to provide [Brianna] with any assistance in coping with the injuries sustained;
>
> f. failing to warn or otherwise make reasonably safe the property which Defendants possessed and/or controlled, leading to the harm to [Brianna];
>
> g. negligently managing and/or operating Room to Grow Pre-school;

4

h. negligently hiring, training, and/or supervising employees of Room to Grow Pre-school; and

i. failing to report suspected or known child abuse.

Monroe Guaranty intervened, seeking a declaration of its rights regarding its obligation to defend and indemnify Thomas and the preschool. The CGL policy issued by Monroe Guaranty included a Day Care Professional Liability coverage endorsement which contained several exclusions. In seeking summary judgment, Monroe Guaranty first argued no liability could attach to the Room to Grow Preschool, LLC, because it had not been formed and was not in existence at the time of the incident, and, as a result, it should be dismissed as a party. Further, Monroe Guaranty contended sexual abuse did not qualify as an "Occurrence" as defined by the policy, all of the daycare endorsement exclusions applied, and the insureds failed to timely report Brianna's claims.

Citing *K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751 (Ky. App. 2005), the trial court concluded no coverage existed for Brianna's alleged injuries because they arose out of violations of multiple sections of KRS[1] Chapter 510. The trial court found the CGL and daycare endorsement contained an exclusion of coverage for any "bodily injury" arising out of the violation of any statute, government rule, or regulation. Thus, the trial court held Monroe Guaranty owed no duty under the policy to provide insurance coverage, a defense, or indemnification to the defendants for Brianna's claims. There being

---

[1] Kentucky Revised Statutes.

no genuine issue of material fact as to coverage, the trial court granted summary judgment in favor of Monroe Guaranty. Brianna, Thomas, and Room to Grow appealed.

A divided Court of Appeals panel affirmed concluding:

> It is unthinkable penetration of the vagina of a two-year-old child, resulting in four lacerations, is not violative of our statutes, regardless of the identity of the perpetrator and regardless whether a conviction could be obtained. The language of the exclusion does not specify that the statutory violation must result in a conviction.

Thus, the majority held the endorsement's "violation of any statute" exclusion precluded coverage for Brianna's injuries. Further, the majority rejected Brianna's assertions the policy language and exclusions rendered coverage illusory and violated the doctrine of reasonable expectations. Finally, the majority was unpersuaded by Brianna's assertion her claims "arose out of" common law negligence rather than from the violation of any statute, reasoning insurance coverage and the duty to defend come solely from the express language of the insurance contract, not from allegations raised in a complaint. Discerning no genuine issue of material fact and concluding Monroe Guaranty owed no duty to provide insurance coverage as a matter of law, the Court of Appeals affirmed. These consolidated appeals followed.

Initially, we note Room to Grow Preschool, LLC, was not formed until 2007, some seven years after Brianna allegedly sustained her injuries. As it was not a legal entity in existence when the cause of action arose, no liability could attach, and it obviously could not be deemed to be covered by an insurance policy issued years before its formation. Thus, Monroe Guaranty

6

plainly had no obligations to defend against or provide coverage for any claims raised relative to Room to Grow Preschool, LLC, and was therefore entitled to judgment as a matter of law. Insofar as the trial court's declaratory and summary judgment dismissed Brianna's claims against Monroe Guaranty related to actions of Room to Grow Preschool, LLC, it is affirmed. We turn now to issues surrounding the remaining parties.

Before this Court, Brianna[2] argues the Court of Appeals erred in affirming the trial court's entry of declaratory and summary judgment in favor of Monroe Guaranty. She raises many of the same issues she has brought previously, but primarily asserts the "violation of any statute" exclusion is inapplicable, and the policy language contains no other applicable bars to coverage. She contends the trial court and Court of Appeals read the daycare endorsement's exclusion too broadly to exclude coverage when *any* person violates *any* statute. Monroe Guaranty defends the decisions of the lower courts and insists the endorsement's exclusions apply to deny coverage for Brianna's claims.

Our review reveals the trial court and the Court of Appeals have overlooked a critical step in the calculus of determining coverage under the CGL, and in so doing, summary judgment was improvidently granted and affirmed on appeal. At the outset of our analysis, however, we underscore

---

[2] Thomas and Room to Grow were granted leave to adopt Brianna's brief relative to their cross-motion for discretionary review. No further action has been taken by either since that time.

7

insurance coverage is a separate issue from liability. Our decision today, therefore, should not be read as expressing an opinion relative to the merits of Brianna's underlying negligence claims.

At the time of Brianna's assault, Thomas, doing business as Room to Grow Preschool, was insured under a Monroe Guaranty CGL insurance policy, with an additional endorsement relating specifically to operation of a "Day Care Center." In pertinent part, the CGL provided Monroe Guaranty would indemnify Thomas for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The insurance applied only if such "'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the coverage territory[.]" Further, the CGL provided insurance would not apply to "'bodily injury' or 'property damage' expected or intended from the standpoint of the Insured." The policy follows the widely used definition of "Occurrence" as meaning "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy did not define the term "accident."

The endorsement for "Home Child Day Care/Day Care Professional Liability" coverage provided additional coverage specific to the operation of a preschool. The endorsement excluded coverage for any "bodily injury," "property damage," or other "injury" arising out of "violation of any statute, or government rule or regulation;" "individual liability for personal acts or omissions of a nature other than day care;" or "[d]ishonest, fraudulent,

criminal or malicious acts or omissions of the insured, and partner, or employee."  The endorsement also altered the definition of "occurrence" relative to day care operations, amending the term "to include any act or omission arising out of the rendering of or failure to render professional service as a day care."

Interpretation of insurance contracts is subject to de novo review by this Court.  *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.,* 306 S.W.3d 69, 73 (Ky. 2010).

> As a general rule, interpretation of an insurance contract is a matter of law for the court.  While ambiguous terms are to be construed against the drafter and in favor of the insured, we must also give the policy a reasonable interpretation, and there is no requirement that every doubt be resolved against the insurer.  Finally, the terms should be interpreted in light of the usage and understanding of the average person.

*Stone v. Kentucky Farm Bureau Mut. Ins. Co.,* 34 S.W.3d 809, 810-11 (Ky. App. 2000) (citations omitted).  When "a summary judgment has been granted in a declaratory judgment action and no bench trial held, the standard of review for summary judgments is utilized."  *Ladd v. Ladd,* 323 S.W.3d 772, 776 (Ky. App. 2010) (citation omitted).  "The standard of review on appeal of summary judgment is whether the trial court correctly found there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."  *Carter v. Smith,* 366 S.W.3d 414, 419 (Ky. 2012) (citations omitted).  "If a question of material fact exists when viewing the evidence through a lens most favorable to . . . the party opposing summary judgment, summary judgment is inappropriate."  *Allstate Ins. Co. v. Smith,* 487 S.W.3d 857, 860 (Ky. 2016).

9

Summary judgment is only proper when "it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky. 1991) (citation omitted). The word "impossible" in *Steelvest* was "used in a practical sense, not in an absolute sense." *Perkins v. Hausladen,* 828 S.W.2d 652, 654 (Ky. 1992).

In the case at bar, the trial court based the entirety of its coverage decision on the language of the exclusions contained in the daycare endorsement. Likewise, the Court of Appeals focused its attention on the same language. However, no determination appears in the record regarding whether Brianna's claimed injuries resulted from an "occurrence" which would trigger an initial grant of coverage. Thus, because the trial court skipped a fundamental threshold step in deciding the matters before it, we must conclude the grant of declaratory and summary judgment was premature and improper.

Unless terms are defined in the written insurance policy, the language thereof is given its plain meaning. *Kentucky Ass'n of Cntys. All Lines Fund Trust v. McClendon,* 157 S.W.3d 626, 630 (Ky. 2005). As previously stated, the policy defined "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" but did not define "accident." The term "accident" has not acquired a technical meaning within the law and is therefore defined by its ordinary meaning. *Cincinnati,* 306 S.W.3d at 74. "Inherent in the plain meaning of 'accident' is the doctrine of fortuity." *Id.*

10

> [I]n determining whether an event constitutes an *accident* so as to afford the insured CGL policy coverage, courts must analyze this issue according to the doctrine of fortuity: 1) whether the insured intended the event to occur; and 2) whether the event was a "'chance event' beyond the control of the insured." If the insured did not intend the event or result to occur, and the event or result that occurred was a chance event beyond the control of the insured, then CGL coverage covering *accidents* will apply to the benefit of the insured.

*Martin/Elias Properties, LLC v. Acuity*, 544 S.W.3d 639, 643 (Ky. 2018) (quoting *Cincinnati*, 306 S.W.3d at 76). Where either intent or control is present, the event is not an accident, and therefore not an occurrence under the CGL language.

The question presented is whether injuries sustained as the result of a sexual assault inflicted upon a child of tender years while that child is under the care and supervision of a licensed daycare qualifies as an "occurrence" within the meaning of the CGL policy. The answer to that question necessarily depends on the facts of the case and factual determinations are to be made by trial courts as those tribunals are ideally situated to make such decisions. Unfortunately, the trial court did not do so, and the record is insufficiently developed to permit an appellate court to adequately discern the appropriate answer. Instead of first determining whether Brianna's claims could, under any circumstances, qualify as triggering events for the CGL policy, the trial court moved directly to analyzing the exclusions contained in the daycare endorsement. Such reverse analysis was in error.

> CGL coverage analysis is a three-step process: (1) was the event covered under the policy as an "occurrence?" If so, (2) are there any explicit policy exclusions for the damage that occurred? If not, (3) are there any exclusions to those policy exclusions, such as

11

PCOH coverage?

. . . .

> In simplistic terms, the process is such: if the insuring clause does not extend coverage, one need look no further. If coverage exists, exclusions must then be considered. If an exclusion excludes coverage, an exception to the exclusion may re-grant coverage. However, the entire process must begin with an initial grant of coverage via the insuring clause; otherwise, no further consideration is necessary. *Therefore, in the present case, we do not address any arguments regarding exclusions or exceptions to exclusions because here there is no initial coverage due to the lack of . . . an "occurrence."*

*American Mining Ins. Co. v. Peters Farms, LLC,* 557 S.W.3d 293, 298 (Ky. 2018) (quoting *Cincinnati* 306 S.W.3d at 78 n.35).

The exclusionary provisions of the CGL and any endorsements thereto only become relevant after the court has first determined if the claim is potentially covered under the insuring provisions of the policy. Here the trial court has put the proverbial cart before the horse by determining Brianna's claims are subject to the particular exclusionary language of the endorsement without ever discerning whether coverage should exist in the first instance. "[E]xclusion clauses do not grant coverage; rather, they subtract from it." *Kemper Nat. Ins. Companies v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 872 (Ky. 2002). "[A] court need not consider the applicability of an exclusion if there is no initial grant of coverage under the policy." *Id.* Because the trial court's grant of declaratory and summary judgment was based on a flawed and incomplete factual and legal analysis, it was infirm. Thus, we are constrained

to reverse the Court of Appeals and remand to the trial court for further proceedings.

Because we are reversing on other grounds, we need not decide the remainder of the issues raised which do not impact the result of these appeals. However, we believe it is important to briefly address certain matters which are likely to reoccur on remand. We are troubled by the expansive reading embraced by the trial court of the "violation of any statute" exclusion and the apparent broadening of that interpretation by the Court of Appeals to include the violation by any person—not limited to the insured's or their employees—of any of the Commonwealth's thousands of statutes—regardless of the subject matter covered thereby. As noted by Judge Acree in his dissent, the exclusions in the endorsement would appear to apply only to the expanded coverage for damages "arising out of the rendering or failure to render professional services in connection with the operation of the Insured's business as a daycare." Neither court below adequately analyzed or explained why the statutory violation exclusion should be read to cover anyone other than the insured or apply to statutes outside the realm of operating a daycare. On remand, should the trial court determine there was an "occurrence" triggering coverage and again be tasked with interpreting the exclusionary provisions of the base policy and the endorsement, it must rely solely on facts which are in evidence and draw all reasonable inferences in favor of the party opposing any summary judgment motion. The trial court is encouraged to make adequate findings which clearly denote the reasoning for its ruling on coverage. The trial court

13

should also carefully analyze and explicitly explain its ruling on the applicability of exclusionary language based on its factual findings. Including such findings will ensure the record is fully developed to enable effective and adequate appellate review, if necessary and requested.

For the foregoing reasons, the decision of the Court of Appeals is affirmed in part, reversed in part, the matter is remanded to the Calloway Circuit Court for further proceedings consistent with this Opinion.

All sitting. Conley, Keller, Nickell, VanMeter, JJ., concur. Minton, C.J., Hughes and Lambert, JJ., concur in result only.

COUNSEL FOR APPELLANT/CROSS-APPELLEE, BRIANNA ROBINSON:

Kevin C. Burke
Jamie K. Neal
Burke Neal PLLC

John B. Bruce
Kevin M. Monsour
Bruce Law Group, LLC

Nathan Williams
Bahe, Cook, Cantley & Nefzger PLLC


COUNSEL FOR APPELLEE/CROSS-APPELLEE, MONROE GUARANTY INS. CO.:

David K. Barnes
Matthew R. Londergan
Schiller Barnes Maloney PLLC


COUNSEL FOR APPELLEES/CROSS-APPELLANTS, ROOM TO GROW PRESCHOOL, LLC, & JOHN ABBINGTON THOMAS:

Richard L. Walter
Boehl Stopher & Graves


COUNSEL FOR AMICUS CURIAE, INSURANCE INSTITUTE OF KENTUCKY:

Ronald L. Green
James M. Inman
Green Chestnut & Hughes, PLLC