RENDERED:  DECEMBER 2, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0976-MR

KENTUCKY FARM BUREAU
MUTUAL INSURANCE COMPANY                                          APPELLANT

v.              APPEAL FROM BOYD CIRCUIT COURT
                HONORABLE GEORGE W. DAVIS, III, JUDGE
                ACTION NO. 15-CI-00328

WILLIAM N. WALTERS AND RYAN
BREWER                                                            APPELLEES

OPINION
REVERSING AND
REMANDING

** ** ** ** **

BEFORE:  COMBS, McNEILL, AND K. THOMPSON, JUDGES.

COMBS, JUDGE:  This is a declaratory judgment action between an insurance

company and its insured.  Kentucky Farm Bureau Mutual Insurance Company

(Kentucky Farm Bureau) appeals from an order of the Boyd Circuit Court.  The

circuit court concluded that the terms of a commercial general liability (CGL)

policy issued to William Walters required Kentucky Farm Bureau to defend a civil

action against him and to pay damages caused by a landslide (or landslip) on property that Walters had graded and prepared as a building lot. After our review, we reverse and remand.

This appeal marks the parties' third appearance before this Court. Once again, we set forth the relevant facts and procedural history of the dispute expanding upon our earlier recitations as time and subsequent events have made necessary.

Walters operates an excavation business. In September 2000, he purchased property in Catlettsburg. He built a road through the property and sold the standing timber. According to Walters, he undertook various erosion control measures while the timber was being harvested. Once the timber was removed, Walters graded the property and otherwise prepared it for development. He subdivided the acreage into 40 residential lots and named it Mountain View Estates.

During the development process, Walters was cited for his failure to prevent erosion which was washing away large amounts of sediment. Furthermore, an inspection report prepared by Kentucky's Environmental and Public Protection Cabinet indicated specifically that "several acres of slopes show severe erosion because they have not been stabilized."

Ryan Brewer became interested in building a home in Mountain View Estates in August 2014. He and his parents met with Walters and Walters's realtor at the development in September 2014. In his deposition, Brewer explained that he saw an excavator at the property and it was obvious that Lot 52 and Lot 54 had been recently excavated; he asked Walters if there was any reason to be concerned about building on either of the lots. According to Brewer, Walters explained that a portion of Lot 54 had slipped down the hill and that he (Walters) had undertaken steps to restabilize the ground. Lot 52 had been partially excavated to "tie everything back in." (At his deposition, Walters remembered that he had also excavated in order to repair a sewer-line leak on Lot 50, which he did not consider an attempt to restabilize the ground following a landslip.)

Approximately one week later, because he felt that Lot 52 had a better view, Brewer contracted to purchase it. Brewer decided to forego his right to have the property inspected "because as the developer of the lot, I thought [Walters] would have been the professional to talk to. He was the one to know everything about it." While no soil stabilization test had ever been conducted, Brewer stated that his conversations with the realtor and Walters persuaded him that the property was suitable for building. The transaction closed on November 13, 2014.

After he purchased the property, Brewer decided upon a house plan that he found online, and he visited Lot 52 with his builder, Millard Chaffins. Chaffins began construction of the home in February 2015.

Walters was hired by Chaffins to dig the footings according to dimensions supplied by Chaffins. Walters excavated the footings to bedrock, completing his work. Construction was then interrupted by severe winter weather. Then, in March 2015, the land slipped about three feet beyond the edge of the footing. The slip was nearest the slope at the rear of the property. In his deposition, Brewer stated that it was his understanding that the slip began at Lot 54 and migrated to his Lot 52.

In April 2015, Brewer's attorney corresponded with Walters advising him of the slip at Lot 52. Counsel alleged that Walters had represented to Brewer that the property was suitable for home construction and claimed that excavation work performed by Walters led to the landslip. Brewer hired soil engineers with Alternative Building Concepts to study the problem. The company suggested that piers be constructed to stabilize the foundation of the house. Another geotechnical engineering firm was hired in May 2015 to study the foundation. That firm concluded that the foundation had not been impacted by the slip and that the structure was at a low risk of being adversely affected in the future.

On April 28, 2015, Brewer filed his complaint against Walters in Boyd Circuit Court. It included eleven causes of action alleging variously that Walters was: negligent and grossly negligent in his excavation and development of Lot 52; that he was negligent and grossly negligent in failing to disclose conditions that he knew or reasonably should have known made Lot 52 unsuitable for construction; and that he was negligent *per se* with respect to the excavations undertaken at Mountain View Estates. The complaint also alleged fraud, negligent misrepresentation, unjust enrichment, breach of contract, and finally, breach of the covenant of good faith and fair dealing.

At the time the claim was made, Walters (doing business as William Walters Heavy Equipment) had two insurance policies with Kentucky Farm Bureau -- a farm-owner policy and the CGL policy. The policies provide that Kentucky Farm Bureau will pay sums that the insured becomes legally obligated to pay as damages because of property damage but only where the property damage is caused by an "occurrence." "Occurrence" is defined by the policies as "an accident."

After Walters notified Kentucky Farm Bureau of Brewer's claim, Kentucky Farm Bureau sent Walters correspondence informing him that it was reserving its right to deny coverage because of the delay in reporting the loss and because the claims might not be covered by the policy. Nevertheless, Kentucky

Farm Bureau employed counsel to represent Walters in the civil action against him. Walters answered and denied the allegations made by Brewer.

In May 2015, Walters filed a third-party complaint against Chaffins, the home builder. Walters alleged that the slip at Lot 52 had occurred as a result of the delay in construction once the footings had been excavated. Additionally, he alleged that Chaffins's decision to place a footing beyond the slope of the lot contributed to the slip. As an alternative, Walters alleged that the combined negligence of Brewer, Chaffins, and him (Walters) caused the "accident" and the damages claimed by Brewer. Construction of the house was completed in late-summer of 2015.

Discovery and pre-trial litigation continued. Throughout the litigation, Walters continued to be represented by counsel employed on his behalf by Kentucky Farm Bureau.

At his deposition in June 2016, Walters explained that a small slip had appeared at Lot 52 three or four months before Brewer purchased it. Walters repaired it and "had it fixed perfect, and grass coming up." He denied talking with Brewer about any slip before Brewer purchased the lot because, as he stated, "[n]obody asked me." He believed that his realtor was aware of the slip at Lot 52 and felt sure that the excavation and attempt to re-stabilize the land was obvious to everyone who viewed the property. According to Walters, "there was nothing

wrong with [Lot 52] . . . there wasn't no cracks, there wasn't nothing. There wasn't a crack in that hill until they stuck the footer over the hill and it filled full of water."

Additionally, Walters felt that the dwelling's footprint was too large for Lot 52, but "[he] wasn't hired to build that house." He alleged that Chaffins was in a rush to get the footing excavated and the foundation prepared so that he [Chaffins] could take a draw from Brewer's loan. He attributed the slip to Chaffins's decisions -- "If Mr. Chaffins hadn't dug the footer and walked off and left it, [Lot 52] would have been fine. You can't dig a nine-foot footer 50 foot long, fill it full of nine feet of water, come freezing rain, it lay up there for six weeks, and not expect the hill below it not to slip."

On August 4, 2017, Kentucky Farm Bureau filed an intervening petition for declaratory judgment concerning the coverage offered by its policies. Walters filed an answer to the petition, requesting the court to declare that the terms of the policy afforded him coverage for the claims asserted against him by Brewer. Kentucky Farm Bureau filed a motion for summary judgment. By its order entered April 20, 2018, the circuit court declared that Kentucky Farm Bureau was estopped to deny coverage under its policies because of its delay in pursuing the issue. The first appeal to this Court followed.

By our opinion rendered February 21, 2020, in *Kentucky Farm Bureau Mutual Insurance Company v. Brewer*, 596 S.W.3d 620 (Ky. App. 2020), the order of the Boyd Circuit Court was reversed.  We concluded that the mere passage of time between Kentucky Farm Bureau's correspondence to Walters reserving its rights and the declaratory judgment proceedings was insufficient to preclude it from contesting coverage.  *Id.*  We held that the court erred by failing to consider whether Kentucky Farm Bureau ever misrepresented to Walters that it was no longer defending under a reservation of rights and whether Walters was prejudiced by Kentucky Farm Bureau's failure to assert its no-coverage position earlier.  *Id.*  Consequently, we remanded for these factual findings.  We expressly declined to decide whether the Kentucky Farm Bureau policies afford coverage for Brewer's claims.

On remand, Kentucky Farm Bureau argued:  1) that it was not estopped from pursuing the coverage issue because it had never misrepresented its position concerning its reservation of rights; and 2) that Walters had not been prejudiced by the timing of its decision to dispute coverage.  Moreover, it contended that neither policy issued to Walters provided coverage for the claims asserted against him by Brewer.

In its order entered January 12, 2021, the circuit court concluded that liability attributable to Walters's alleged acts of intentional conduct and grossly

-8-

negligent conduct "would not be covered under the [CGL] Policy[.]"  However, it concluded that "alleged acts of negligent conduct, . . . if found [to be] true by the trier of fact, would constitute an 'occurrence'" under Kentucky Farm Bureau's CGL policy and that Walters would, in that event, be entitled to liability coverage. The circuit court's order did not reference the estoppel issue addressed by our opinion reversing and remanding.  Nor did it specifically reference the terms of the farm owner policy issued to Walters by Kentucky Farm Bureau.

Kentucky Farm Bureau filed its notice of appeal.  Walters did not cross-appeal the circuit court's judgment with respect to coverage of the damages allegedly caused either by his acts of intentional conduct or grossly negligent conduct.

By our order entered on June 17, 2021, we dismissed the second appeal.  While the circuit court had designated its order as final and appealable, the order did not recite that "there is no just cause for delay."  On that basis, a motion panel of the Court concluded that we lacked jurisdiction to consider the appeal. CR[1] 54.02.  On August 6, 2021, the circuit court revised its order to indicate that it had made the omitted determination and that there was, in fact, no just cause for delay.  This third appeal followed.  Again, Walters did not cross-appeal.

---

[1] Kentucky Rules of Civil Procedure.

On appeal, Kentucky Farm Bureau argues that no cause of action asserted by Brewer against Walters could trigger the liability coverage afforded by its policies. We agree that the circuit court erred by concluding that Walters could be entitled to coverage under the terms of the CGL policy.

A party seeking a declaratory judgment may move (with or without supporting affidavits) for a summary judgment in his favor. *Foreman v. Auto Club Property-Casualty Insurance Company*, 617 S.W.3d 345 (Ky. 2021). Upon our review, we determine whether the record supports the trial court's conclusion that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. Because the interpretation of insurance contracts is a matter of law, our review is *de novo*. *Foreman*, *supra*. Where provisions of an insurance contract are unambiguous and reasonable, they are enforced as written. *Id.*

By their terms, Walters's policies cover his liability for property damage caused only by an *accident*. Kentucky Farm Bureau argues that the allegations upon which Brewer relies -- referring to Walters's negligence and other wrongful conduct in preparing Lot 52 for sale -- were not an accidental cause of the alleged property damage. The Supreme Court of Kentucky has analyzed identical policy language under similar facts. It has held, as a matter of law, that coverage is not triggered under these CGL policy provisions where an insured had

-10-

control over the disputed event -- even if he did not intend to cause the resulting damage. The disputed event in this case is Walters's preparation of the ground at Mountain View Estates.

In *Bituminous Casualty Corporation v. Kenway Contracting, Inc.*, 240 S.W.3d 633 (Ky. 2007), an employee of a construction company was sent to demolish a carport. He misunderstood the scope of the project and, instead, he tore down much of an adjoining structure. The Kentucky Supreme Court held that even though the employee intentionally undertook demolition, the construction company never intended to destroy anything but the carport. This event was characterized as an accident that triggered coverage under the terms of the policy.

In *Cincinnati Insurance Company v. Motorists Mutual Insurance Company*, 306 S.W.3d 69 (Ky. 2010), the Court considered whether faulty construction undertaken at a home constituted an accident covered by the builder's CGL policy. The Court refined its analysis. It noted that the term "accident" had not acquired a technical meaning in the law and had to be interpreted according to its ordinary meaning. *Id.* at 74. "Inherent in the plain meaning of 'accident' is the doctrine of fortuity." *Id.* Examining the facts as alleged by the plaintiff, the Court concluded that the disputed construction -- even where it ultimately proved faulty -- had been undertaken in accordance with the builder's plan and intention and "[did] not involve the fortuity required to constitute an accident." *Id.* at 80

(citation omitted). The builder had intended to undertake the construction just as he saw fit and the resulting property damage was not the result of chance or fortuity. The builder retained full control over the operation with no intervening accidental occurrence.

In *Martin/Elias Properties, LLC v. Acuity*, 544 S.W.3d 639 (Ky. 2018), the Supreme Court of Kentucky again applied the concept of fortuity. Where a subcontractor undertaking renovations in a basement rendered the entire house unstable, the Court observed that the subcontractor had exercised control of his work even though it ultimately proved faulty. The Court concluded that the property damage was not caused by an accident but rather was an unintended consequence of the subcontractor's poor workmanship. Coverage for an accident is available to protect the insured only where the insured did not intend the event or result to occur, **and** the result was a chance event beyond anyone's control. Under these circumstances, the Court held that the subcontractor's liability coverage had not been triggered.

In the case before us, Walters's allegedly improper preparation of the building site was not an "accident" because Walters was in control of the grading and other preparation of the development. That he might have undertaken his work negligently -- with natural and foreseeable consequences -- does not transform the landslip into an accident. The undisputed evidence indicates that

Walters was aware of the soil conditions at Mountain View Estates. He had been cited for his failure to prevent erosion from washing away large amounts of sediment; he had also been made aware by environmental officials that the slopes had become severely eroded because he failed to take necessary steps to stabilize them. By his own admission, Walters had become aware of the instability of Lot 52 before he sold it to Brewer and had tried again to prevent it from slipping.

In light of these undisputed facts, Walters could not deny that damage to the property resulting from his grading and soil preparation -- if undertaken negligently -- was reasonably to be anticipated. Landslips under these conditions are not unusual or unexpected. Therefore, under these specific circumstances, the landslip, if it were caused by Walters's negligent workmanship, cannot be characterized as an accident. Consequently, the coverage provisions of the policy were not triggered.

Based upon the forgoing, the judgment of the Boyd Circuit Court is reversed and remanded for entry of an order consistent with this Opinion.

THOMPSON, K., JUDGE, CONCURS.

McNEILL, JUDGE, CONCURS IN RESULT ONLY AND FILES SEPARATE OPINION.

McNEILL, JUDGE, CONCURRING IN RESULT ONLY: In consideration of the majority's well-written Opinion, I must respectfully concur in result only. There are two core claims at issue here. First, there is the tort claim arising from

-13-

Walters's alleged errors in excavating Brewer's property. Second, there is a contract claim concerning denial of insurance coverage brought by Kentucky Farm Bureau.

The only reasoning advanced by the circuit court in denying Kentucky Farm Bureau's motion for summary judgment is that "Plaintiff has nonetheless alleged acts of negligent conduct, which if found true by the trier of fact, would constitute an 'occurrence' under sad [sic] policy." It therefore appears that the court erroneously conflated the two claims. The CGL policy covers accidents, not negligence.

"Generally, the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002). *See also Martin/Elias Properties, LLC v. Acuity*, 544 S.W.3d 639, 641-42 (Ky. 2018) ("Interpretation of a contract is ordinarily a question of law for a court's determination."); *Lewis v. Monumental Life Ins. Co.*, No. 2006-CA-000914-MR, 2007 WL 1207153, at *2 (Ky. App. Apr. 20, 2007) ("The construction and interpretation of an insurance policy is a question of law for the Court."); and *Foster v. Kentucky Hous. Corp.*, 850 F. Supp. 558, 560-61 (E.D. Ky. 1994) ("Since there are no relevant factual disputes, the interpretation and construction of the insurance policy is a matter of law for the court.").

Whether there was an "occurrence" under the policy is most appropriately a matter of law to be decided in the first instance by the circuit court. Therefore, I respectfully concur in result only because I believe the circuit court erred by conflating the two claims, and by concluding that the trier of fact must determine whether there was an "occurrence" under the CGL policy. I would reverse the circuit court and remand for the court to enter an order on the occurrence issue as a matter of law. Upon remand, if the court determines that there are genuine issues or material of fact that negate a judgment as a matter of law, then there is of course nothing prohibiting the court from so holding. In any event, I believe the circuit court should have the opportunity to revisit this issue with the guidance provided herein.

BRIEFS FOR APPELLANT:

John J. Ellis
Morehead, Kentucky

BRIEF FOR APPELLEE WILLIAM WALTERS:

Robert T. Renfroe
Greenup, Kentucky