RENDERED:  NOVEMBER 1, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1470-MR

T&S CUSTOM HOMES, LLC D/B/A
SANCTUARY HOMES                                                    APPELLANT


v.            APPEAL FROM SHELBY CIRCUIT COURT
              HONORABLE MELANIE BRUMMER, JUDGE
              ACTION NO. 23-CI-00067


KENTUCKY FARM BUREAU
MUTUAL INSURANCE COMPANY;
JANICE M. HELSON; AND
TIMOTHY D. HELSON                                                  APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND CALDWELL, JUDGES.

THOMPSON, CHIEF JUDGE:  T&S Custom Homes, LLC d/b/a Sanctuary

Homes appeals from an opinion and order of the Shelby Circuit Court granting

summary judgment in favor of Kentucky Farm Bureau ("KFB").  The order held

that KFB does not owe a duty to defend or indemnify Appellant in a suit brought

by Janice and Timothy Helson against Appellant.  We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

On March 16, 2021, Janice and Timothy Helson hired Appellant to install a swimming pool on their property. Appellant, as the general contractor, hired subcontractors to install the pool. Installation of the pool began on July 14, 2021, and was completed on July 28, 2021. Appellant then turned over the worksite to the Helsons. The Helsons then hired another contractor, Jack Walters and Sons Corporation ("Walters"), to build a barn-like structure around the pool which would totally enclose the pool area.

While the building was being constructed around the pool, the Helsons contacted Appellant claiming that the pool was not level and part of the pool wall was bowed.[1] On October 25, 2022, the Helsons filed a complaint in Oldham Circuit Court alleging that the pool was installed incorrectly and damaged. The Helsons sought damages for breach of contract, unjust enrichment, *quantum meruit*, and detrimental reliance.

Appellant is insured with KFB under a commercial general liability ("CGL") insurance policy. After the complaint was filed, Appellant submitted a claim to KFB under the CGL policy. Appellant believed that, pursuant to the CGL policy, KFB would defend against the suit and indemnify Appellant against any

---

[1] Other allegedly defective issues were also brought to Appellant's attention, but these are the most severe.

damages awarded. KFB then filed the underlying petition for declaratory judgment asking the court to find that there was no coverage for the Helsons' complaint.

KFB eventually filed a motion for summary judgment. The trial court granted it and held that the CGL policy did not apply. This appeal followed.

## STANDARD OF REVIEW

> It is well settled that the proper interpretation of insurance contracts generally is a matter of law to be decided by a court; and, thus, an appellate court uses a [*de novo*], not a deferential, standard of review. Similarly, when we review a trial court's decision to grant summary judgment, as in this case, we must determine whether the trial court correctly found that there were no genuine issues of material fact; as findings of fact are not at issue, the trial court's decision is entitled to no deference.

*Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010), *as corrected* (Jul. 19, 2011) (footnotes and citations omitted).

## ANALYSIS

Before we begin our analysis of the arguments presented on appeal, we will first set forth the relevant clauses from the KFB policy. The policy states that KFB will

> pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we

-3-

will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

The policy goes on to say that the insurance applies to bodily injury and property damage only if the bodily injury or property damage "is caused by an 'occurrence.'" "Occurrence" is then defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Property damage is then defined in relevant part as "[p]hysical injury to tangible property, including all resulting loss of use of that property."

With these policy clauses in mind, we now turn to the arguments on appeal. Appellant argues that it is entitled to liability coverage and a legal defense for the property damage being sued over in the Helsons' case or, in the alternative, that summary judgment was premature because there were still genuine issues of material fact to be determined.

The insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage of the policy. The insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage regardless of the merit of the action. The determination of whether a defense is required must be made at the outset of the litigation. The duty to defend continues to the point of establishing that liability upon which plaintiff was relying was in fact not covered by the policy and not merely that it might not be.

*James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814

S.W.2d 273, 279 (Ky. 1991) (citations omitted).

> If the insurer believes there is no coverage, it has several
> options. One is to defend the claim anyway, while
> preserving by a reservation of rights letter its right to
> challenge the coverage at a later date. Another is to elect
> not to defend. However, should coverage be found, the
> insurer will be liable for "all damages naturally flowing
> from" the failure to provide a defense. This includes
> "damages" for reimbursement of defense costs and
> expenses if the insured hires his own lawyer, and in some
> instances, the amount of a default judgment, if he does
> not.

*Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 841 (Ky. 2005), *as*

*modified on reh'g* (Jan. 19, 2006) (citations omitted).

In the case at hand, there are two competing theories on how the pool

became damaged. The Helsons believe that Appellant installed the pool

incorrectly. Appellant believes that the damage was caused by Walters when it

began constructing the structure around the pool. KFB argued that if this was

faulty workmanship, then there was no coverage under the CGL policy, and the

trial court agreed. There is only coverage under the CGL policy if the property

damage is caused by an occurrence. As previously mentioned, an occurrence is

defined as an accident. The trial court held that faulty workmanship, as is alleged

by the Helsons, does not constitute an accident. If there was no accident, then

there was no occurrence. If there was no occurrence, then there is no coverage.

The court also held that if another third party, like Walters, caused the damage to the pool, the CGL policy also did not apply because Walters was not under the control of Appellant and the policy only covers the actions of Appellant. We agree with the trial court.

The term "accident" is not defined in the CGL policy; however, in *Cincinnati Ins.*, *supra*, the Kentucky Supreme Court defined the term as it related to a CGL policy and faulty workmanship. In *Cincinnati Ins.*, there was a CGL policy with identical language to the one at hand and a property damage dispute due to faulty workmanship. The Court in that case stated:

> Since the term *accident* is not defined in the policy, we must afford it its ordinary meaning, if that meaning is not ambiguous. We do not find the terms "accident" or "occurrence" to be ambiguous, at least under these facts. Thus, since the term "accident" has also not acquired a technical meaning in the realm of insurance law, we must accord the term "accident" its plain meaning.
>
> Inherent in the plain meaning of "accident" is the doctrine of fortuity. Indeed, "[t]he fortuity principle is central to the notion of what constitutes insurance . . . ." Although we have used the term "fortuity" in the past, we have not fully explored its breadth and scope. In short, fortuity consists of two central aspects: intent, which we have discussed in earlier opinions, and control, which we have not previously discussed.
>
> We recently recognized that the concept of fortuity is "inherent in all liability policies[,]" and explained that a loss was fortuitous if it was "not intended . . . ." And we were correct in so doing because the issue of intent is

one important aspect of the fortuity doctrine. As a leading insurance treatise notes, "[f]ortuity primarily concerns intent." So "a loss or harm is not fortuitous if the loss or harm is caused intentionally by [the insured]."

*Cincinnati Ins.*, 306 S.W.3d at 73-74 (emphasis in original) (footnotes and citations omitted).

The Court went on to hold that faulty workmanship, standing alone, does not constitute an occurrence under a CGL policy. *Id.* at 75. The Court believed that a person who performs faulty work is still in control of that work and intended to perform the work the way he or she did. *Id.* at 75-76. In other words, if a person is in control of the work and intended to perform that work in the way he or she did, then that is not an accident. The Court believed this interpretation would ensure "that ultimate liability falls to the one who performed the negligent work . . . instead of the insurance carrier. It will also encourage contractors to choose their subcontractors more carefully instead of having to seek indemnification from the subcontractors after their work fails to meet the requirements of the contract." *Id.* at 75. This holding was echoed in the case of *Martin/Elias Properties, LLC v. Acuity*, 544 S.W.3d 639, 644 (Ky. 2018), where the Court said, "the emphasis should not be whether the damage done is the type of damage that would be expected by the contractor, but rather whether the damage resulted from the actions purposefully taken by the contractor or those working under the contractor's control."

Based on Kentucky case law, Appellant's alleged faulty workmanship is not covered under the CGL policy because the damage to the pool was not caused by an accident or occurrence.

As for Appellant's theory that the damage was caused by Walters building the structure around the pool, that theory also does not provide Appellant with a path to coverage under the policy. The policy only covers damages caused by Appellant. It does not cover damages by a third party like Walters. Under the policy, KFB is obligated to pay damages Appellant becomes liable for under the terms of the policy and has a duty to defend against a suit regarding those damages. KFB does not have to defend against a suit or pay for damages where someone else is liable.

Let us assume that Walters' actions caused the damage to the pool, but the Helsons mistakenly believe Appellant is the cause. Appellant will be required to defend itself without the aid of the CGL policy even if Appellant is found not liable at the conclusion of the lawsuit. While this hypothetical situation is unfortunate, Appellant is without recourse via the CGL policy. The CGL policy does not protect Appellant against mistaken or frivolous lawsuits.[2] If Walters

---

[2] We are not saying that the Helsons' lawsuit is frivolous or mistakenly filed, but are simply continuing the discussion of our hypothetical situation.

caused the damage to the pool, then Appellant is not liable for any legal damages and the CGL indemnity and defense policy would not apply.

## CONCLUSION

Based on the foregoing, we affirm. Based on either theory of the case, Appellant's CGL coverage does not apply. If Appellant's faulty workmanship is the cause of the damage, then that is not an accident or occurrence, and the policy does not apply. If Walters caused the damage, the policy would still not apply because it only covers the actions and liabilities of Appellant. KFB was entitled to summary judgment as a matter of law and because there are no set of facts where Appellant could succeed. No further discovery or additional proceedings would change the outcome.[3]

ALL CONCUR.

BRIEFS FOR APPELLANT:

Matthew D. Doane
Clinton J. Elliott
La Grange, Kentucky

BRIEF FOR APPELLEE
KENTUCKY FARM BUREAU
MUTUAL INSURANCE
COMPANY:

William B. Orberson
Ryan D. Nafziger
Louisville, Kentucky

---

[3] Other arguments were raised on appeal regarding exclusions listed in the CGL policy; however, they need not be addressed due to our conclusion that there was no property damage covered by the policy. If the policy does not apply, then the exclusions are irrelevant.